**WAGNER et, Plaintiffs-Appellees, v. YOUNGSTOWN (City), Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3819. Decided April 5, 1956.

William A. Ambrose, Pros., H. H. Hull, Asst. Pros., Youngstown, for plaintiffs-appellees.

Felix S. Mika, Director of Law, Frank J. Battisti, Joseph L. Heffernan, Asst. Directors of Law, Youngstown, for defendant-appellant.

## OPINION

By NICHOLS, J.

The City of Youngstown appealed to this court on questions of law from a judgment of the Common Pleas Court of Mahoning County entered for the Commissioners of Mahoning County in a declaratory judgment action brought by the Commissioners to determine whether Mahoning County or the City of Youngstown should pay for the cost of relocating and reestablishing water lines necessitated by widening Ohio State Route 18 by the State Highway Department in Austintown, Mahoning County, Ohio, outside the corporate limits of defendant city.

On November 1, 1952, the parties entered into a written contract by the terms of which the City of Youngstown agreed to furnish water to County Sewer District Number 13 by means of mains and other facilities owned by the county of Mahoning.

The law provides that when county commissioners determine to establish a sewer district within the county the commissioners must provide the water supply necessary to operate the sewer system. Mahoning County had no such water supply of its own. The City of Youngstown, at tremendous expense to the taxpayers of the city, had constructed, owns, maintains and operates its own water system The taxpayers residing in Sewer District Number 13 located outside the City of Youngstown paid nothing toward the construction, maintenance or operation of Youngstown's water supply system. Hence the contract in question was entered into between the county and the city, this contract provided that the residents of the sewer district would be required

to pay 25% more for water used by them and 10% more for servic
than would be charged and paid therefor by residents of the city.

When the Highway Department relocated Ohio State Route 18 th
water line theretofore constructed by Mahoning County was remove
a distance of sixteen feet from its original location and twenty-fiv
hydrants and 196 curb boxes and shut-off valves which had been pro
vided by the county at the time of constructing its water line wer
required to be moved and relocated, necessitating the construction o
six hundred feet of new and additional water lines.

The question arose between the parties as to who should bear th
expense made necessary in relocating and constructing the nev
water line and relocating and reconnecting the necessar
fire hydrants, curb boxes and shut-off valves. Whereupon the partie
agreed that the city, which owned equipment necessary to do the work
would do the work and furnish the materials required so as to provid
the sewer district with water, and it was agreed between the parties tha
the county commissioners would bring this declaratory judgment actior
to determine the obligations of the respective parties under their con-
tract theretofore entered into.

The contract provided, among other things, that the county shoul
construct and maintain the water lines, including facilities, at its own
expense for the period of one year and the city agreed that at th
expiration of the period of one year it would "maintain and service a
its own expense the same in good working order," and would permit th
construction by the county of new water lines and connections with
existing lines. The contract provided further that the City of Youngs-
town "shall have no obligation to construct or to assume the cost of
construction of any new water lines" or facilities within the district

The cost of the new construction made necessary by the relocation of
the county's mains may approximate $60,000.00. There is no claim that
the water line or facilities were in need of repair or inadequate to serve
the needs of the sewer district at any time before removal and relocation
became necessary, hence no part of the cost of removal and relocation
of the same would have fallen upon the city.

It is clear that the water lines located within the sewer district were
constructed and owned by Mahoning County, and will belong to the
county whenever the contract may be terminated. It was the same lines
and facilities then owned and constructed by the county that the city
agreed to maintain and service. It did not agree to maintain or service
any new line which might be required during the period of the contract,
and this is made clear by the fact that the contract provides that the
city shall have no obligation to construct or to assume the costs of
construction of any new water lines or facilities within the sewer district.

The city agreed to furnish only surplus water not required by the
city for its own purposes. Hence its obligation would end when the
necessities of the city demanded, and in any event at the expiration of
twenty years from the date of the contract.

It seems unreasonable to infer from this contract that the city in
addition to the millions of dollars spent for establishing their own water
supply ever intended to assume the obligation of paying for the new

ater lines outside the city limits, necessitated by the relocating of tate Route 18, when no additional income would result to the city.

All the city obligated itself to do under the contract was to maintain, hat is keep in repair, the county's mains and facilities as they existed t the time of the contract.

The plaintiffs contend that the word "maintain" as used in the ontract is broad enough to include all the expenses involved in removing and relocating the water line and facilities owned by the county.

The trial court held that the city having in paragraph five of the ontract agreed to maintain and service at its own expense the line and acilities in the sewer district in the same manner as the pipe system is maintained and serviced within the city of Youngstown, that this clause vas broad enough to include the expense involved in the relocation and econstruction of the water lines and facilities required by the widening f the highway.

We find such interpretation fails to take into consideration the specific clause in the contract providing that the city of Youngstown shall have no obligation to construct or assume any portion of the cost of onstruction of any new water lines or facilities within the district, as howing that the obligation of the city was limited to the water lines and acilities as they were located and existed at the time of the contract.

It is provided by paragraph six of the contract that the city will 'permit connections to all existing water lines and permit the construction of new water lines and connections thereto within said district in accordance with the established regulations of the City of Youngstown—Division of Water."

Certainly the contract relates to the existing water lines owned by the county and by using the language whereby permission was granted to the county to construct new water lines and connections it seems definitely to have been contemplated that any major changes made were required to be made at the expense of the county and not of the city.

We find the judgment of the trial court is contrary to law and must be and is reversed and final judgment entered for the defendant, City of Youngstown.

PHILLIPS, PJ, concurs in judgment.
GRIFFITH, J, dissents.

## CONCURRING OPINION

By PHILLIPS, J.

Defendant, City of Youngstown, appealed to this court on questions of law from a judgment of the trial court entered for plaintiffs, County Commissioners. in an action for a declaratory judgment brought by them to determine whether plaintiff Mahoning County or defendant City of Youngstown should pay for the cost of relocating water lines sixteen feet from their original location at a cost upwards of $60,000.00 necessitated by widening Ohio State Route 18 by the State Highway Department in Austintown Township, Mahoning County, Ohio, outside the corporate limits of the defendant city.

388

The defendant city had the facilities for doing the work in question immediately available and in the interest of avoiding delay in widening Route 18, in conveniencing the residents of Sewer District No. 13, and in consideration of plaintiff county commencing the declaratory judgment action in the court of common pleas which we review agreed with plaintiff county to do and did do the work in question.

Twenty fire hydrants and one hundred ninety six curb boxes and shut-off valves installed by plaintiff county servicing abutting dwellings were necessarily removed and relocated in West Austintown Sewer District 13 and six hundred feet of new and additional water mains or lines necessitated by such widening were laid by defendant city.

On November 1, 1952, the parties entered into a written contract by the terms of which the defendant city agreed to furnish surplus water to Sewer District 13 by means of mains and other facilities owned by plaintiff county.

The contract provided, among other things, that the county should construct and maintain the water lines, including facilities, at its own expense for a year, which it did; that at the expiration of the period of one year the defendant city was obligated "to maintain and service at its own expense the same in good working order"; and to permit the construction by the county of new water lines and connections with existing lines. The contract provided further that the defendant city "shall have no obligation to construct or to assume the cost of construction of any new water lines" or facilities within the district.

The users of the water in question are charged twenty-five per cent more for the water used than Youngstown city water users are charged and a service charge of ten per cent not charged city water users.

The plaintiff county contends that the word "maintenance" as used in the contract is broad enough to include such expense and justify the judgment of the trial judge.

The defendant city contends that the expense of the relocation here involved did not result from "maintenance" in the sense of keeping in repair, for which it committed itself.

In my opinion the work performed by the defendant city of Youngstown in relaying at a new location the water line which had formerly been constructed by the plaintiff county, still owned by it, and still in a good and serviceable condition, was not a part of maintenance but was work done in the construction of a new line at a new location, which the defendant city was not required to do under its contract as clearly shown by the provision expressly providing that the city "shall have no obligation to construct or to assume the cost of construction of any new water lines."

For the reasons stated I believe the judgment of the trial court is contrary to law and must be and is reversed hereby, and that final judgment must be and is hereby rendered for the defendant City of Youngstown.

NICHOLS, J, concurs in judgment.
GRIFFITH, PJ, dissents.

## DISSENTING OPINION

By GRIFFITH, J.

My judgment in this case is in accord with that of the Trial Court upon the reasoning set forth in its opinion and with the further added observations.

When the contract in question was entered into on November 1, 1952, both parties thereto were well aware that their rights thereunder were subordinate to the right of the State Highway Department to widen Route No. 18 as the public interest may require. Neither party contemplated this widening project, and the exigency resulting therefrom.

The water main and connections were installed by the county, and the abutting property owners assessed according to benefits. The city has been supplying water to this system since 1941, and the new contract was entered into in November 1952.

Nothing in the contract requires the county to do anything to the main or connections after the taking over by the city. It does require the city to maintain and service. The contract provides:—

"Anything that is not in first-class condition shall be repaired, by Mahoning County, at its own expense, and again inspected and approved by the Commissioner of Water, after which the City of Youngstown— Division of Water agrees to maintain the same at its own expense."

It further provides:—

"The city shall continue to maintain and service, at its own expense, the piping system and all water lines, the maintenance of which has previously been assumed by the City of Youngstown in the same manner as the piping system is maintained and serviced within the City of Youngstown.

"It is further mutually agreed that the City of Youngstown shall have no obligation to construct or assume any portion of the costs of construction of any new water lines, feeder mains, hydrants or other facilities within said district."

Does the term "maintenance," imply the removal and relocation of twenty hydrants to the opposite side of the water main as well as the relocation of 196 curb boxes and shut off valves?

"Maintain," has been defined in 38 Corpus Juris, on page 334, as follows:—

"As its structure suggests, 'maintain' signifies literally, to hold by the hand, While it is a word of common use and said to have a well defined meaning, oftentimes its meaning depends upon the intention of the parties and the contest of the instrument. It is variously defined as to bear the expense of; to continue; to furnish means for the subsistence or existence of; to hold in an existing state or condition; to hold or preserve in any particular state or condition; to keep from change; to keep from falling, declining, or ceasing, to keep in existence or continuance; to keep in proper condition; to keep in repair; to keep up, to preserve; to preserve from lapse, decline, failure, or cessation; to provide for; to supply with means of support; to supply with what is needed; to support; to sustain; to uphold. Negatively stated, it is defined as not to lose or surrender; not to suffer or fail or decline."

The word "maintain," as used in this contract, means continuing the water service already in existence and not as creating or bringing into existence a new service.

The construction work embraced in this case did not involve a complete rebuilding or reconstruction of the water line and connections on Route No. 18. There is a duty on the part of the City to maintain and service the water lines at its own expense after the city inspects the same and sees that they are in first class condition.

I have no difficulty in arriving at the conclusion that the language used in the contract is sufficiently broad as to include what is tantamount to relaying and reinstalling the connections, hydrants, and curb boxes if the same became necessary.

For the reasons set forth in the Trial Court's opinion and these added reasons, the declaratory judgment of the Trial Court should be affirmed.